FILED
U.S. District Court
District of Kansas

3/30/2021

Clerk, U.S. District Court
By_____AA_____Deputy Clerk

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Kansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A SKYPE ACCOUNT IDENTIFED BY ASSOCIATED EMAIL<br>ACCOUNT ERADICUSPRIME@GMAIL.COM<br>AND PHONE NUMBER 1-239-898-1486 | Case No. 21-MJ-__6036__-01-GEB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
A SKYPE ACCOUNT IDENTIFED BY ASSOCIATED EMAIL ACCOUNT ERADICUSPRIME@GMAIL.COM
AND PHONE NUMBER 1-239-898-1486

located in the ____WESTERN____ District of ____WASHINGTON____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

and 18 U.S.C. 2703(d)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

x evidence of a crime;

x contraband, fruits of crime, or other items illegally possessed;

x property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251 | Production of Child Pornography |
| 18 U.S.C. § 2252/2252A | Offense relating to the Sexual Exploitation of Children |
| 18 U.S.C. § 2423(b) | Travel to engage in Illicit Sexual Activity |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kasev R. Sundar, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/30/2021

*Judge's signature*

City and state: Wichita, Kansas

Honorable Gwynne E. Birzer, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH:<br><br>A SKYPE ACCOUNT IDENTIFED BY ASSOCIATED EMAIL ACCOUNT ERADICUSPRIME@GMAIL.COM AND PHONE NUMBER 1-239-898-1486<br><br>THAT IS STORED AT PREMISES CONTROLLED BY MICROSOFT CORPORATION | Case No. __21-6036-GEB__ |

**AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT**

I, Kasev R. Sundar, Special Agent of the Federal Bureau of Investigation, being duly sworn, do hereby depose and state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and have been employed by the FBI as such since August 2020. Prior to that, I was an Army Officer on Active Duty.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since January 8, 2021. As a Special Agent of the FBI, I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States, including violations of Title 18, United States Code §§ 2251, 2252, 2252A, and 2423. Before becoming a Special Agent for the FBI, I was an Army Officer on Active Duty. One of my additional duties during my Active Duty time was conducting non-judicial military investigations into actions that violated military

policies such as negligent discharges of firearms, vehicle safety violations, and workplace accidents resulting in injuries.

3. I have received training on conducting a wide variety of criminal investigations, to include organized crime, drug trafficking, human trafficking, crimes against children, major theft, and other federal crimes. I have also received training on the preparation and execution of search warrants. I am currently conducting criminal investigations on multiple subjects.

4. As will be shown below, there is probable cause to believe that the identified Skype account has been used in the production, transportation, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A, and that the account has been involved in the facilitation or commission of travel with intent to engage in illicit sexual activity, in violation of 18 U.S.C. § 2423(b). I submit this application and affidavit in support of a search warrant authorizing the search of the account described in Attachment A. I seek authorization to examine the account to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to the aforementioned criminal violations, and as further described in Attachment B.

5. The information in this affidavit has been communicated to me by other law enforcement investigators and witnesses involved in this investigation, as outlined below. Since this affidavit is being submitted for the limited purpose of supporting a search warrant, I have not included each and every fact known to me or other investigators concerning this investigation. Instead, I have set forth only those facts that I believe are necessary to establish the existence of probable cause to support a search warrant.

6. This affidavit is only intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## DEFINITIONS

7. The following definitions apply to this Affidavit and Attachment B:

   - "Child Pornography" includes any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct; (b) the visual depiction was a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct; or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. See 18 U.S.C. § 2256(8).

   - "Minor" means any person under the age of 18 years. See 18 U.S.C. § 2256(1).

   - "Sexually explicit conduct" applies to visual depictions that involve the use of a minor, see 18 U.S.C. § 2256(8) (A), or that have been created, adapted, or modified to appear to depict an identifiable minor, see 18 U.S.C. § 2256(8) (C). In those contexts, the term refers to actual or simulated (a) sexual intercourse (including genital-genital, oral-genital, or oral-anal), whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person. See 18 U.S.C. § 2256(2) (A).

   - "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. See 18 U.S.C. § 2256(5).

   - "Child Erotica" means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily, in and of themselves, obscene or that do not necessarily depict minors in sexually explicit poses or positions.

- "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  See 18 U.S.C. § 1030(e) (1).  This includes devices commonly known as laptops, desktops, netbooks, personal digital assistants, and smartphones, but is not limited to those devices.
- "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.

**INVESTIGATION/PROBABLE CAUSE**

8. On March 23, 2021, K.T. contacted Wichita State University Police Department in reference to her attempting to locate her daughter, Minor Victim 1 (15 yr. old b/f born in 2005), who had not returned to her residence.

9. K.T. had found the cellphone of Minor Victim 1 hidden under Minor Victim 1's bed at the residence. K.T. found a picture of Minor Victim 1 with an adult male on the phone.

10. K.T. used the "locate my device" application to determine the location of Minor Victim 1's MacBook. The location of the MacBook was showing at 4703 E. 19th St. N., Wichita, Kansas, 67208 – the address to the Hyatt Place hotel, which is on Wichita State University property.

11. K.T. contacted WSU police, provided them the picture of the male with Minor Victim 1. WSU police learned from Hyatt Place staff that the male had been seen at the hotel, and identified the room for the male as #432.

12. When WSU Police Officers knocked on the door of Room 432, Michael J. Taylor (TAYLOR), a 46-year old man, answered the door in his "boxer shorts." TAYLOR advised

he was there with a female he met online. TAYLOR allowed an officer to enter the room, where the officer found 15-year old Minor Victim 1 getting dressed.

13. TAYLOR and Minor Victim 1 were separated and transported to the Child Advocacy Center (CAC) where they were interviewed.

14. While in the hotel room, WSU officers observed two laptops (later identified as a black Lenovo laptop and a smaller black Dell laptop) in plain view, with the larger (Lenovo) laptop on the table next to the couch and the smaller (Dell) laptop on a table near the kitchen area of the hotel room. The WSU officers also observed two Android smartphones (later identified as a Samsung Note and a Samsung Galaxy S Plus) in plain view near the area where the laptops were observed. WSU officers secured these devices for transport to the CAC but did not examine them. A WSU police was left at the room to secure the room.

### Interview of Minor Victim 1

15. In her interview. Minor Victim 1 stated she met TAYLOR in the on-line chat website "Omegle" early in the school year of 2020-2021. The two individuals moved their chat conversations to Instagram and Skype shortly after meeting on Omegle. Minor Victim 1 specifically identified the date of November 8, 2020 as the date she and TAYLOR considered the start of their "dating" relationship. Minor Victim 1 would have been 14 years of age at that time, and they "chatted" about sex acts which Minor Victim 1 eventually agreed to engage. Minor Victim 1 reported she told TAYLOR she was 15 to 17 years old but could not remember exactly which age she told him.

16. Minor Victim 1 used her cell phone and computer to access Skype and Instagram to communicate with TAYLOR, during which she would send TAYLOR nude photographs of

herself and videos of her touching herself in a sexual manner. During these communications, TAYLOR also made plans to travel from Ohio to meet Minor Victim 1 to engage in sex acts.

17. On March 22, 2021, Minor Victim 1 met TAYLOR at the YMCA on Wichita State University campus after he flew from Ohio to Wichita, Kansas. They discussed how Minor Victim 1 would depart from her home and arranged to meet again on March 23, 2021 to have sex.

18. Sometime prior to this meeting, TAYLOR had purchased a SIM card and cellphone to give to Minor Victim 1. Along with this phone, TAYLOR also provided Minor Victim 1 other gifts including a Donald Duck stuffed animal. As Minor Victim 1 explained, the reason TAYLOR provider her with the phone and the SIM card was so they could remain in communication with each other without being detected by her mother.

19. On March 23, 2021, Minor Victim 1 rode her bicycle to the Hyatt Place where she met with TAYLOR. TAYLOR took Minor Victim 1's bike up to Room 432, and then engaged Minor Victim 1 in sexual intercourse and oral sex.

## Interview of Michael J. TAYLOR

20. At the CAC, TAYLOR reviewed and signed a waiver for search/examination of the two smartphones from the hotel room. TAYLOR said the phone with his ID and credit cards was his and the other was a phone he brought to give to Minor Victim 1. TAYLOR provided pin and passcodes for the devices.

21. After advice and waiver of Miranda Rights, TAYLOR stated he met Minor Victim 1 on Omegle in September of 2020. He acknowledged the conversations were sexual in nature and took place on Skype and Instagram as well.

22. TAYLOR said his Skype account (**TARGET ACCOUNT**) is associated with the Google email address eradicusprime@gmail.com and his phone number 1-239-898-1486. TAYLOR advised he used his phone to access Skype.

23. TAYLOR also advised he used another Google email account, mjpt74@gmail.com, to do booking of his hotel as well as rides via Uber and Lyft.

24. TAYLOR advised Minor Victim 1 initially said she was 19 years old but then said she was 15 years of age. TAYLOR claimed he took this as "role-playing," but also advised he knew there were flags about her real age.

25. TAYLOR admitted to receiving and retaining nude depictions of Minor Victim 1, and that he had taken "screenshots" of Minor Victim 1 during their Skype sessions. TAYLOR advised he had saved those depictions to a thumb drive that he brought with him from Ohio. TAYLOR explained he used that thumb drive to transfer those depictions to the phone which he intended to give to Minor Victim 1 (indicating the thumb drive was capable of connecting directly to the phone).

26. TAYLOR explained he flew from Ohio to Wichita, Kansas on March 22, 2021, on American Airlines, bringing a sex toy with him from Ohio, as well as a Samsung Galaxy S Plus cellphone, and a thumb drive containing pornographic depictions of Minor Victim 1. Once in Wichita, he purchased other items, including a SIM card for the phone and a vibrator, that he intended to give to Minor Victim 1.

27. For the Samsung Galaxy S Plus cellphone, TAYLOR explained he created a Google account to associate with the phone, which he identified as tittlemehard@gmail.com. He explained that, while in Wichita, he used a thumb drive to transfer the pornographic depictions of

Minor Victim 1 to the Samsung Galaxy S Plus and that the files were also uploaded to the Google account associated with the phone – "tittlemehard@gmail.com".

28. TAYLOR admitted to engaging in sex acts with Minor Victim 1 on March 23, 2021 in his Hyatt Place hotel room.

29. TAYLOR also signed a waiver /consent for search of:

- the Samsung Galaxy S Plus smartphone;
- the hotel room (#432 at Hyatt Place); and
- the Lenovo Laptop.

30. TAYLOR declined to sign a waiver/consent for search of the Dell laptop.

### Search of Room 432

31. A search of TAYLOR's hotel room revealed handcuffs, an empty box for a Oana Minx vibrator, an empty box for a Lush 3 Lovense vibrator, a box of Trojan condoms containing opened wrappers and 9 unopened condoms, and a number of other items discussed in TAYLOR's interview. The search also revealed more than twenty digital storage devices in a black bag on the kitchen island.

32. A physical examination of one of the USB devices (a SanDisk USB/USBC Combo black and silver, SN BQ1708258312 SDDDC2) showed it was capable of connecting to a conventional computer or a laptop as well as an Android smartphone.

### CHARACTERISTICS OF CHILD PORNOGRAPHERS

33. From conversation with experienced investigators, including those at the Kansas ICAC, I have learned the following regarding child pornography offenders:

   a. The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature. In this investigation, TAYLOR has exhibited an interest in the sexual exploitation of

Page **8** of 15

children. He advised Minor Victim 1 told him she was 15 years old and the defendant persisted in sexualized communication, including receiving and screen capturing images of the minor engaged in sexually explicit conduct. His communications indicate he receives sexual gratification from child exploitation material, and that his interest is persistent given the length of time he engaged Minor Victim 1 in such communications.

b. The majority of individuals who collect child pornography collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography, but which nonetheless fuel their deviant sexual fantasies involving children. In this investigation, TAYLOR retained images of Minor Victim 1, stored them, and transferred them to another device and into cloud storage.

c. The majority of individuals who collect child pornography often seek out like-minded individuals, either in person or on the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different Internet-based mediums used by such individuals to communicate with each other include, but are not limited to, P2P, e-mail, e-mail groups, bulletin boards, IRC, newsgroups, instant messaging, and other similar vehicles. Frequently, multiple mediums will be used. In this investigation, TAYLOR is known to have used multiple mediums, including email, social networking, instant messaging, and online storage, as part of the exploitation of Minor Victim 1.

d. The majority of individuals who collect child pornography maintain books, magazines, newspapers and other writings, in hard copy or digital medium, on the subject of sexual activities with children as a way of understanding their own feelings toward children, justifying those feelings and finding comfort for their illicit behavior and desires. In this investigation, TAYLOR has demonstrated his desire to maintain access to child pornography, not least by bringing it with him to Kansas but also by creating an online account, for which he maintained access and control, to store the images. TAYLOR also kept a large number of storage devices (referenced above) commingled in a black bag, which he brought from Ohio.

e. The majority of individuals who collect child pornography often collect, read, copy or maintain names, addresses (including e-mail addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the Internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange, or commercial profit. These names may be maintained in the original medium from which they were

derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

34. Affiant asserts that, because of the many characteristics which TAYLOR manifests (discussed above), the Skype account that he created is likely to contain evidence of his criminal activities, including: evidence of his interest in child exploitation and child pornography; stored child pornography; evidence of operation of the account(s) used in the production, distribution and receipt of child pornography; evidence relating to his travel to engage in illicit sexual activity, including receipts, itineraries, account identifiers, and communications..

## CONCLUSION

35. Based on the foregoing facts, there is probable cause to believe the above-identified Skype account (further described in Attachment A) to facilitate or commit the production, transportation, distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A, and that these accounts have been involved in the facilitation or commission of travel with intent to engage in illicit sexual activity, in violation of 18 U.S.C. § 2423(b).

36. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the account described above has been involved in violations of 18 U.S.C. §§ 2251, 2252, 2252A and 2423(b), and that evidence of that criminal offense will be located in the account described above.

37. Further, I submit that such evidence, listed in Attachment B to this affidavit, constitutes contraband, the fruits of crime, or things otherwise criminally possessed, or property which is or has been used as the means of committing the foregoing offenses.

38. Therefore, I respectfully request that the attached warrant be issued authorizing the search and seizure of the account identified in Attachment A for the items listed in Attachment B.

*Kasev Sundar*
Kasev R. Sundar
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me in my presence on this 30th day of March, 2021.

*Gwynne E. Birzer*
THE HONORABLE GWYNNE E. BIRZER
United States Magistrate Judge

## ATTACHMENT A

### Description of Account(s) to Searched/Examined

This warrant applies to information associated with the Skype account identified by the Gmail eradicusprime@gmail.com and the phone number 1-239-898-1486 that is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, a company headquartered in Redmond, WA.

## ATTACHMENT B

### Particular Things to be Seized

**I.**   **Information to be disclosed by Skype**

To the extent that the information described in Attachment A is within the possession, custody, or control of Microsoft Corporation ("Microsoft"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Microsoft, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Microsoft is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)   All contact and personal identifying information provided to Microsoft, during the registration process or at any time thereafter;

(b)   All public-facing profile information for the account,

(c)   All photos and videos uploaded by that user and all photos and videos uploaded by any other user to that account, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and video;

(d)   All contacts of the account, lists of approved users, and including the privacy settings associated with such lists;

(e)   All groups and networks of which the user is a member;

(f)   All activity logs, including IP addresses, for the account and all other documents showing the user's activity and other Skype activities;

(g)   All records or other information regarding the devices and internet browsers associated with, or used in connection with, the identified account, including the

        hardware model, operating system version, unique device identifiers, and mobile network information;

(h)     All other records and contents of communications and messages made or received by the user;

(i)     All IP logs, including all records of the IP addresses that logged into the account;

(j)     The types of service utilized by the user;

(k)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(l)     All privacy settings and other account settings for the identified account;

(m)     All records pertaining to communications between Microsoft and any person regarding the identified account, including contacts with support services and records of actions taken.

Microsoft is hereby ordered to disclose the above information to the government within **30 DAYS** of issuance of this warrant. (Microsoft may request an extension, and such extension may be authorized by the receiving agent or agency, Kasev R. Sundar of the FBI.)

II.     **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of the criminal violations of 18 U.S.C. §§ 2251, 2252, 2252A, and 2423(b), as described in the Affidavit, including information pertaining to the following matters:

(a) The identity of the person(s) who created or used the Skype account, including records that help reveal the whereabouts of such person(s);

(b) Evidence indicating how and when the Skype account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Skype account owner;

(c) Evidence indicating the Skype account owner's state of mind as it relates to the crimes under investigation;

(d) Evidence of obscene visual depictions of minors engaged in sexually explicit conduct, child pornography, child erotica, and communications pertaining to child pornography, child sexual abuse, and child sexual exploitation;

(e) Evidence showing communications with or about minors;

(f) Evidence relating to the travel of Michael J. Taylor, including but not limited to receipts, itineraries, maps, pictures, and communications with may reveal the plans and intent relating to the travel; and

(g) Evidence of the creation or operation of any other accounts which were used in the communications with Minor Victim 1.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.